

# SUPREME COURT OF MISSOURI
## en banc

IN THE MATTER OF )
LONNIE BROCKMIRE, DECEASED. )
                                    )
                                    )      No. SC93606
                                    )
                                    )
                                    )

### APPEAL FROM THE CIRCUIT COURT OF CAPE GIRARDEAU COUNTY
The Honorable Scott A. Lipke, Judge

### *Opinion issued March 11, 2014*

The issue in this case is whether a grandchild is entitled to inherit her biological grandfather's estate where her mother (i.e., the decedent's daughter) was adopted by her stepfather before the decedent died. Two statutes provide the answer. First, under section 474.060.1,[1] an adopted child is a "child" of the adoptive parent for purposes of intestate succession, not the biological parent. Second, section 474.010(2)(a) provides that only the decedent's children are entitled to inherit; grandchildren (or other descendants of a "child" of the decedent) inherit only if that child dies before the decedent. Accordingly, this grandchild has no right to inherit her biological grandfather's estate because: (a) her mother was not a "child" of the decedent at time he died, and (b) even if she was, her mother did not predecease the decedent.

---

[1] Unless otherwise noted, all statutory references are to RSMo 2000 or RSMo Supp. 2013.

On July 18, 2011, Lonnie Brockmire ("Decedent") died intestate. He was not survived by a spouse or either parent but was survived by: (a) his brother Ronald; (b) Decedent's only biological child Sherri; and (c) Sherri's daughter Bella. After Sherri became an adult (though prior to Decedent's death), Sherri was adopted by her stepfather (i.e., the husband of her mother). Bella was eight weeks old at the time Sherri was adopted.

Following Decedent's death, Sherri – as custodian of Bella's assets – sought a partial distribution of Decedent's estate to Bella. The circuit court granted this distribution over Ronald's objection. Ronald appeals under section 472.160.1(4), and this Court granted transfer pursuant to Rule 83.04. *See* Mo. Const. art. V, § 10. Because the facts are not in dispute and the appeal involves only questions of statutory interpretation, this Court's review is *de novo*. *Crockett v. Polen*, 225 S.W.3d 419, 420 (Mo. banc 2007).

When a person dies without a will, the person's estate is distributed according to the provisions of sections 474.010 to 474.060. Where there is no surviving spouse, section 474.010(2)(a) provides that the decedent's entire estate is to be divided among the decedent's "children, or their descendants, in equal parts." Accordingly, grandchildren do not have any statutory inheritance rights *as grandchildren*. Instead, a grandchild is entitled to a share of the decedent's estate only if: (1) the grandchild is a descendant of a "child" of the decedent; and (2) this "child" would have been entitled to inherit but for predeceasing the decedent. § 474.010(2)(a).

Applying the plain language of section 474.010(2)(a), it is clear that Bella is not entitled to inherit Decedent's estate. First, Sherri is still alive. But for her adoption, Sherri would inherit Decedent's estate – not Bella. Second, Bella cannot inherit as a descendant of a "child" of the decedent because Sherri was not Decedent's "child" at the time he died.

Sherri attempts to overcome the plain language of section 474.010(2)(a) by arguing that Bella is entitled to inherit Decedent's estate because: (1) Sherri should be treated as a "child" of Decedent despite her adoption; and (2) Sherri should be deemed to have "died" as a result of that adoption. Not only do the statutes governing adoption and intestate succession not support such conclusions, but they also plainly preclude them.

Adoptions are governed by chapter 453, and section 453.090 describes, in part, the general consequences of an adoption:

> 1. When a child [regardless of age] is adopted in accordance with the provisions of this chapter, ***all legal relationships and all rights and duties between such child and his natural parents (other than a natural parent who joins in the petition for adoption as provided in section 453.010) shall cease and determine***. Such child shall thereafter be deemed and held to be for every purpose the child of his parent or parents by adoption, as fully as though born to him or them in lawful wedlock.
>
> 2. Such child shall be ***capable of inheriting from, and as the child of, his parent or parents by adoption as fully as though born to him or them in lawful wedlock*** and, if a minor, shall be entitled to proper support, nurture and care from his parent or parents by adoption.

§ 453.090 (emphasis added).[2]

---

[2] Should her adoptive father die intestate, not only does section 453.090.2 ensure that Sherri would be treated as if she were his biological child, this Court long has held that Bella would inherit from that estate as Sherri's "descendant" in the event Sherri predeceases her adoptive

3

Even though section 453.090.2 makes it clear that the effect of Sherri's adoption is to make her the child of her adoptive parent for all purposes, this statute leaves the door open for Sherri to argue that she *also* remains Decedent's child for purposes of intestate succession and, therefore, she (or Bella, as her descendant) is entitled to inherit from Decedent's estate too. Section 474.060, however, closes this door with an unmistakable slam:

> If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person, an adopted person is the child of an adopting parent *and not of the natural parents*[.]

§ 474.060.1 (emphasis added). *See also Wailes v. Curators of Cent. Coll.*, 254 S.W.2d 645, 649 (Mo. banc 1953) ("[i]t is no part of the public policy of the state that adoption should operate as an instrumentality for dual inheritance").

This case presents precisely the type of dispute that section 474.060.1 was intended to resolve because the relationship of Decedent and Sherri as "parent and child" must be established before Bella's rights of intestate succession – which derive solely from and through Sherri – can be determined under section 474.010(2)(a). Because section 474.060.1 declares unequivocally that Sherri is *not* Decedent's child, Bella cannot inherit as a descendant of a "child" of the decedent, even if the Court assumes that Sherri

---

father. *See, e.g., Bernero v. Goodwin*, 184 S.W. 74, 76 (Mo. 1916) ("adoption created the status of an inheriting child in [grandchild's] father, and the right of [grandchild] to represent his father is given him by the statute of descents, by use of the words 'or their descendants'"); *Williams v. Rollins*, 195 S.W. 1009, 1010 (Mo. 1917) ("in case of the death of an adoptive child prior to the death of the adopting parent, such child stands in the same relation of heirship to the estate possessed by the adopting parent at the time of his or her death that a natural and lawfully born child would occupy under similar circumstances").

should be treated as having "died" as a result of her adoption. Accordingly, neither Sherri nor Bella has any legal relationship to Decedent for purposes of intestate succession, and neither of them is entitled to inherit his estate under section 474.010(2)(a).[3]

Even though the plain language of sections 474.010(2)(a) and 474.060.1 appear to make short work of this case, Sherri (on behalf of Bella) contends that the Court cannot apply these statutes as written. Instead, because Sherri insists that the phrase "children, or their descendants" in section 474.010(2)(a) conflicts with the phrase "surviving issue" in section 474.010(1), she argues that the Court is bound to "harmonize" these two provisions to avoid absurd results that may occur in future cases. According to Sherri, if Decedent had been survived by a spouse, Bella would have qualified as "surviving issue" for purposes of section 474.010(1), which distributes part of a decedent's estate to a surviving spouse and sets aside the remainder of the estate for the decedent's "surviving issue." Because Bella would have qualified as "surviving issue," Sherri argues that the Court must construe "children, and descendants of children" in section 474.010(2) to include Bella or Bella never could receive the share of the estate reserved for her under section 474.010(1).

Leaving aside whether future hypothetical conflicts ever can justify ignoring the plain meaning of statutory language in a present case, Sherri's elaborate construct fails to justify any such departure from the plain language of section 474.010(2) in this case. The

---

[3] The Court's holding pertains only to intestate succession. Decedent could have provided for Bella in a will, thereby avoiding the effect of the intestate succession statutes altogether.

5

flaw in Sherri's argument is that Bella would not qualify as a "surviving issue" of Decedent, even if he had been survived by a spouse. Even though the phrases "children, or their descendants" in section 474.010(2) and "surviving issue" in section 474.010(1) are used for different purposes, they both describe the same group of heirs. Accordingly, there is no conflict between these phrases, and neither phrase includes Bella.

Sherri's argument that Bella would have been a "surviving issue" of Decedent (had he been survived by a spouse) is based on the definition of "issue" in section 472.010(16), which includes "adopted children and all lawful lineal descendants[.]" This argument ignores the last clause of this definition, however, which excludes "those who are the lineal descendants *of living lineal descendants of the intestate*." [Emphasis added.] This language, like the phrase "or their descendants" in section 474.010(2)(a), ensures that Bella cannot be the "issue" of anyone as long as Sherri is alive.

Even if Sherri should be deemed to have "died" as a result of her adoption (a proposition for which Sherri fails to provide any support or argument), the reference to "adopted children" in the definition of "issue" is a reference to children adopted *by* the decedent, not the decedent's biological children who have been adopted by another. Accordingly, section 472.010(16) merely reinforces that Bella could be a "surviving issue" only of Sherri's adoptive father, not a "surviving issue" of Decedent.

This conclusion is strengthened further by section 472.010(22), which defines the phrase "lineal descendant" to include "adopted children *and their descendants*." [Emphasis added]. Sections 472.010(16) and (22), therefore, play much the same role in

6

defining "surviving issue" that section 474.060.1 plays in defining the phrase "children, or their descendants" in section 474.010(2)(a), i.e., that an adopted child and that child's descendants leave the old bloodline completely and join the new bloodline for purposes of intestate succession. *See Wailes*, 254 S.W.2d at 649 ("the adopted child is taken out of the blood stream of its natural parents and placed, by the operation of law, in the blood stream of its adopting parents") (*quoting St. Louis Union Trust Co. v. Hill*, 76 S.W.2d 685, 689 (Mo. banc. 1934)).

Accordingly, Sherri's statutory construction argument fails. The Court will not strain to include Bella among Decedent's "surviving issue" under section 474.010(1) simply to manufacture a "conflict" that can serve as justification for ignoring the effect of sections 474.010(2)(a) and 474.060.1, which plainly and unequivocally exclude Bella from Decedent's "children, or their descendants."

The last of Sherri's arguments that merit discussion is her contention that this Court should not adopt any construction of section 474.010(2)(a) that precludes Bella from inheriting Decedent's estate solely because of Sherri's adoption. This argument is based on Sherri's assertion that Bella "had a vested right to her legal bloodline," and that Bella was deprived of this "right" by Sherri's adoption without any notice of – or right to be heard in – that proceeding.

This argument ignores the principle that "no one is an heir to the living and that the living have no heirs in a legal sense." *Wass v. Hammontree*, 77 S.W.2d 1006, 1010 (Mo. 1934). As a result, "[h]eirs apparent or expectant heirs of a living person *have no fixed or vested interest* in the property of such person," and it "is not until the death of

7

the owner that his property becomes subject to the laws of descent and distribution ***or that the persons designated as heirs have any interest therein***." *Id.* (emphasis added). Accordingly, even though Sherri's adoption affected how Missouri's intestate succession statutes apply to Decedent's estate, neither that adoption nor its effect on the application of these statutes deprived Bella of any legal right or interest.

Acknowledging that Bella neither had nor lost any right, property or interest as a result of Sherri's adoption, Sherri devotes a considerable portion of her brief to self-described policy arguments that she contends favor Bella's inheritance in these circumstances. These arguments, too, misperceive the nature of intestate succession statutes and the role this Court plays in applying them.

> Inheritance of property is not an absolute or natural right, and is not a right which may not be abolished by the lawmakers. We mean by this that there is no constitutional provision in this state which would prohibit the lawmaking power from changing or abolishing entirely the law as to descents and distributions.

*State ex rel. McClintock v. Guinotte*, 204 S.W. 806, 807 (Mo. banc 1918).

Because the General Assembly may enact whatever intestate succession statutes it sees fit – or none at all – this Court is not authorized to second-guess the policy decisions reflected in sections 474.010(2)(a) and 474.060.1, let alone manipulate the effect of those statutes by ignoring their plain language. If these statutes fail to serve the public interest under the present circumstances – a question on which the Court neither expresses nor harbors any unexpressed views – only the legislature is empowered to amend those statutes to avoid such results in the future.

8

## *Conclusion*

For the reasons set forth above, the judgment of the circuit court is reversed.[4]

_____
Paul C. Wilson, Judge

All concur.

---

[4] Even though this decision answers a question of first impression, it is consistent with prior opinions of this Court about the subject of intestate succession. *See, e.g., Bernero*, 184 S.W. at 75 (holding that where "an adopted child dies during the life of its adopting parent, leaving children, such children are for most, if not for all, purposes, ***regarded as natural grandchildren of the adopting parent***") (emphasis added). But, because this decision is limited to intestate succession, it should not be read as expressing any view about decisions reaching similar results under entirely different statutory schemes. *See, e.g., Aegerter v. Thompson*, 610 S.W.2d 308, 310 (Mo. App. 1980) (adoption abrogates rights of natural parent under section 453.090 and "this statutory abrogation should extend to the grandparents" such that the statutory visitation rights of grandparents do not apply following the adoption of the grandchildren's parent into another bloodline); *In re Marriage of A.S.A.*, 931 S.W.2d 218, 225 (Mo. App. 1996) (same); *In re Adoption of R.S.*, 231 S.W.3d 826, 831 (Mo. App. 2007) (same).